Trading Stamp Cases, 166 Wis. 613.

# APPENDIX.[1]

## TRADING STAMP CASES.

STATE EX REL. SPERRY & HUTCHINSON COMPANY vs. WEIGLE,
Dairy and Food Commissioner, and others.

STATE EX REL. ED. SCHUSTER & CO., INC., vs. WEIGLE, Dairy
and Food Commissioner, and others.

STATE EX REL. MERCHANDISE BOND COMPANY vs. WEIGLE,
Dairy and Food Commissioner, and others.

STATE EX REL. UNITED CIGAR STORES COMPANY OF AMERICA
vs. WEIGLE, Dairy and Food Commissioner, and others.

*December 8—December 20, 1917.*

*Constitutional law: Prohibiting use of trading stamps redeemable in*
*merchandise: Authorizing cash slips: Limitations as to redemp-*
*tion: Police power: Classification: Equal protection of the laws:*
*Impairing contract obligations: Excessive penalties: Due pro-*
*cess of law.*

1. Ch. 480, Laws 1917 (sec. 1747m, Stats. 1917),—which in substance
   prohibits, under penalty, the use, giving, or issuance, in con-
   nection with the sale of goods, of any trading stamp or other
   similar device redeemable in articles of merchandise,—is a
   valid exercise of the police power of the state.
2. The provision in said statute that "any manufacturer, packer, or
   dealer may issue any slip, ticket, or check with the sale of any
   goods," bearing upon its face "a stated cash value" and redeem-
   able only in cash at the face value in sums of twenty-five cents
   or over "by the person, firm, or corporation issuing the same,"
   makes a valid classification and does not deny to any person
   "the equal protection of the laws."
3. Said statute, being prospective in its operation and not affecting
   the use of trading stamps or other similar devices in sales made

---

[1] These cases were not printed in their regular order because of
the pendency therein of motions for a rehearing, which were after-
wards abandoned.

before it goes into effect (on January 1, 1918), is not unconstitutional as impairing contract obligations.

4. The statute being simple and clear and its penal features involving no complexity or cumulation of penalties, it cannot be held that it denies "the equal protection of the laws" or that it deprives persons of liberty or property "without due process of law" by imposing such excessive penalties as to intimidate or deter them from testing its validity in the courts. *Bonnett v. Vallier*, 136 Wis. 193, distinguished.

5. The limitation of the redemption of the authorized cash slips, tickets, or checks to "amounts aggregating twenty-five cents or over of redemption value," is reasonable and valid.

THESE are actions in this court by the plaintiffs to restrain the defendants from enforcing the provisions of ch. 480, Laws 1917, as unconstitutional and invalid.

The attorney general, in answer to the several complaints, filed a demurrer upon the ground that it appears on the face of the complaints that the same do not state facts sufficient to constitute a cause of action.    The cases were argued together.

The *Sperry & Hutchinson Company,* a foreign corporation licensed to transact business in this state, alleges that it conducts its business in the following manner: It enters into a contract with a merchant engaged in a particular line of trade in a city.    By this contract the *Sperry & Hutchinson Company* agrees to furnish the merchant with tokens or symbols known as S. & H. Green Trading Stamps, which the merchant offers to all of his cash customers.    The customer receives one stamp for each ten cents represented by his purchase.    The merchant gives to the customer a trading-stamp book, which is also furnished to the merchant by the *Sperry & Hutchinson Company,* and in this the customer pastes and preserves his stamps.    On the back of each stamp is printed the following:

"Subject to the notice in our green trading-stamp book, this stamp will be redeemed by us in merchandise or cash. It is our property and not transferable except as stated in such notice.    SPERRY & HUTCHINSON COMPANY."

The plaintiff also enters into similar contracts with merchants engaged in other lines of business in the same city. All merchants under contract with the plaintiff give one of these S. & H. stamps to every customer with each ten-cent cash purchase or multiple thereof, and the customer pastes these stamps, no matter from which merchant he receives them, in a book furnished him by one of the merchants. When the customer has filled one or more of these books with stamps, he takes it to one of the stores of the plaintiff and receives cash for them, or, in lieu of cash, selects some article or articles of merchandise there on display, or from a catalogue furnished by the plaintiff. The retail value of the merchandise thus given in exchange for the stamps is alleged to be greater than the cash value of the stamps by reason of the fact that the plaintiff purchases the merchandise in large quantities and at wholesale or manufacturer's cost. The retail value of the merchandise given in exchange for stamps, plus the cost of doing business in the state, equals or exceeds the sums paid the plaintiff by merchants in the state for the use of the system and the stamps, the plaintiff's profits being derived by its purchasing in large quantities and at wholesale prices and its large volume of business. The compensation received by the plaintiff from merchants with whom it enters into contracts is standardized by districts or zones throughout the country and is measured by the number of stamps ordered and furnished to the merchant, at the rate of a certain price per thousand, which is uniform throughout the zone but varies with the number of thousands ordered and furnished.

*Ed. Schuster & Co., Inc.,* in its complaint, alleged its business to be conducted in the following manner: It operates large department stores in the city of Milwaukee, issuing and redeeming its own stamps in merchandise, redeeming at its own stores over $100,000 of merchandise a year. *Ed. Schuster & Co., Inc.,* also sells stamps to several hundred merchants in the state who desire to use the same, and each

and every merchant so using the same may redeem in merchandise, and *Ed. Schuster & Co., Inc.,* in turn redeems for the merchants, and in this manner more than $50,000 of merchandise is annually distributed by means of trading stamps. The stamps are given as a discount for cash purchases or the prompt payment for goods purchased on credit, usually on the basis of two stamps with each ten cents of merchandise purchased, resulting in a two per cent. discount to the purchaser who pays cash, but redeemable in merchandise either of the relator or one of the merchants with whom it does business, and redeemable only in lots of 1,000 or multiples thereof, or making the discount applicable to the consumer only when $50 of merchandise has been purchased.

The complaint of the *Merchandise Bond Company* shows that its system is somewhat similar, with the exception that the *Merchandise Bond Company* operates no stores, but concerns itself exclusively in building up an organization of merchants who buy its stamps, which are issued in like manner and upon like conditions as the stamps of *Ed. Schuster & Co., Inc.,* and are redeemable in the merchandise of any store under contract with the *Merchandise Bond Company* for issuing its stamps as a discount. The relator has built up an organization of various merchants who wish to avail themselves of the common token known as a "merchandise bond" and by which the purchases are evidenced, and in that manner about $125,000 of merchandise are distributed on stamps redeemed, which stamps in turn are taken up at contract price from the person redeeming them by the relator.

The *United Cigar Stores Company* retails cigars, cigarettes, and smokers' articles throughout the United States. As a method of advertising its business and for the purpose of inducing trade it gives to its customers certain articles of merchandise called premiums. The value of the premiums is in proportion to the amount of the customer's purchases. At the time of the purchase a customer is given a coupon representing the amount paid, and upon presentation of these

coupons the customer is permitted to select one or more articles of the class represented by the amount of the goods sold, as shown by the number of the coupons presented. Relator does not sell its coupons or use them in any other way, nor does any other merchant use them.

Each of the relators prayed for the issuance of a writ restraining the defendants from enforcing the provisions of ch. 480, Laws 1917.

For the relator *Sperry & Hutchinson Company* there were briefs by *Bottum, Bottum, Hudnall & Lecher* of Milwaukee, attorneys, and *Frank T. Walcott* of New York, of counsel, and oral argument by *Mr. Walcott* and *Mr. George B. Hudnall* and by *George P. Miller* of Milwaukee.

For the relators *Ed. Schuster & Co., Inc.,* and the *Merchandise Bond Company,* a brief by *William Kaumheimer* of Milwaukee, their attorney, was signed also by *Quarles, Spence & Quarles* of Milwaukee, of counsel for the *Merchandise Bond Company.* A supplemental brief for *Ed. Schuster & Co., Inc.,* was also filed and the cause was argued orally for both relators by *Mr. Kaumheimer.*

For the relator *United Cigar Stores Company of America* there were briefs by *Richmond, Jackman, Wilkie & Toebaas* of Madison, attorneys, and *John Hall Jones* of New York, of counsel, and oral argument by *Mr. Jones* and *Mr. Ralph W. Jackman.*

A brief attacking the validity of the law was also filed by *Jones & Schubring* of Madison, appearing for the Wisconsin Economy League, representing numerous clubs and members.

For the defendants there was a brief by the *Attorney General* and *Walter Drew,* deputy attorney general, and oral argument by *Mr. Drew.*

The following opinion was filed December 20, 1917:

PER CURIAM. In these cases it is decided:

(1) Ch. 480 of the Laws of 1917, creating sec. 1747m of the Wisconsin Statutes and prohibiting the use, issuance, or

delivery or causing or authorizing "to be furnished or delivered to any other person, firm, corporation, or association within this state, in connection with the sale of any goods, wares or merchandise, any trading stamp, token, ticket, bond, or other similar device" entitling the purchaser receiving the same to procure in exchange therefor "any goods, wares, merchandise privilege, or thing of value," and prescribing penalties for violation of the act, is an appropriate and constitutional exertion of the police power of the state to prohibit and regulate the transactions embraced in the act.

(2) The provisions of the act authorizing "any manufacturer, packer or dealer" to "issue any slip, ticket, or check with the sale of any goods, wares or merchandise," bearing on its face "a stated cash value" and "redeemable only in cash" at the face value in sums of twenty-five cents or over "by the person, firm or corporation issuing the same," do not violate accepted constitutional principles of classification, nor do they constitute an invasion of the constitutional right guaranteeing to every person the equal protection of the laws.

(3) The act is not unconstitutional as impairing the obligation of contract; it being prospective in its operation, and does not affect the use of trading stamps, tokens, tickets, bonds, or similar devices in connection with sales made before it goes into effect.

(4) The act does not deprive persons of property or liberty without due process of law by the imposition of such excessive penalties as to intimidate against testing its legality.

(5) The nature and kind of business of the several plaintiffs and the methods employed by them respectively in their conduct show that they are severally engaged in transactions in connection with their respective businesses which this statute denounces and forbids.

An opinion will be filed expressing the views of the court upon the questions involved in this decision.

The following opinion was filed January 5, 1918:

SIEBECKER, J.   The proceedings in these actions were instituted to restrain the defendants as state officers from enforcing the provisions of ch. 480, Laws 1917, entitled "An act to create section 1747m of the statutes, prohibiting the use of trading stamps, and providing a penalty."   It is thereby enacted:

"No person, firm, corporation or association within this state shall use, give, offer, issue, transfer, furnish, deliver, or cause or authorize to be furnished or delivered to any other person, firm, corporation, or association within this state, in connection with the sale of any goods, wares or merchandise, any trading stamp, token, ticket, bond, or other similar device, which shall entitle the purchaser receiving the same to procure any goods, wares, merchandise privilege, or thing of value in exchange for any such trading stamp, token, ticket, bond, or other similar device, except that any manufacturer, packer or dealer may issue any slip, ticket, or check with the sale of any goods, wares or merchandise, which slip, ticket or check shall bear upon its face a stated cash value," redeemable only in cash at the stated amounts by the party issuing them when presented in amounts aggregating twenty-five cents or over.

The other parts of the act prescribe penalties for its violation and enjoin upon the dairy and food commissioner the duty of enforcing the act.   The act is assailed by all the complainants as unconstitutional and void upon the grounds (1) that it invades their liberties by denying them the right to freely conduct their private businesses, which, they claim, are in no way inimical to the public welfare; (2) that it denies the freedom of contract in relation to such business; (3) that it provides an improper and arbitrary classification of persons engaged in such businesses conducted by identical methods; (4) that the limitations of the amounts at which trading stamps may be redeemed are unreasonable and arbitrary;

and (5) that the penalties imposed are so severe and exces-
sive as to intimidate persons accused of violating the act
from enforcing their legal rights and thus deprive them of
due process of law.

The issuing of trading stamps or other similar tokens in
connection with the sale of goods, wares, and merchandise,
redeemable in merchandise or money by the trader or some
other person or a corporation for him, has been practiced
for a long period of time and is considered lawful unless
prohibited by law.   In recent times the trading-stamp busi-
ness has been the subject of much attempted legislative reg-
ulation which aimed to restrict the use of such stamps in
various ways and means.   The courts that have dealt with
such legislation are not agreed in their views as to the effect
the practice of issuing trading stamps in connection with the
sale of merchandise has upon the public generally, nor do
their views harmonize as to whether the issuance and re-
demption of such stamps in the manner this has usually been
done in the trade is a proper subject for legislative regulation
in the interest of public welfare within the prescribed limi-
tations of the legislative power under the federal and several
state constitutions.   The scope within which the legislative
function may be exercised within the police power of a state,
so far as applicable to the plaintiffs and the subjects involved
in this litigation, is well set forth in the case of *Crowley v.
Christensen,* 137 U. S. 86, 11 Sup. Ct. 13:

"It is undoubtedly true that it is the right of every citizen
of the United States to pursue any lawful trade or business,
under such restrictions as are imposed upon all persons of
the same age, sex, and condition.   But the possession and
enjoyment of all rights are subject to such reasonable condi-
tions as may be deemed by the governing authority of the
country essential to the safety, health, peace, good order, and
morals of the community.   Even liberty itself, the greatest
of all rights, is not unrestricted license to act according to
one's own will.   It is only freedom from restraint under
conditions essential to the equal enjoyment of the same right

by others. It is then liberty regulated by law. The right to acquire, enjoy, and dispose of property is declared in the constitutions of several states to be one of the inalienable rights of man. But this declaration is not held to preclude the legislature of any state from passing laws respecting the acquisition, enjoyment, and disposition of property. What contracts respecting its acquisition and disposition shall be valid and what void or voidable; when they shall be in writing and when they may be made orally; and by what instruments it may be conveyed or mortgaged; are subjects of constant legislation. And as to the enjoyment of property, the rule is general that it must be accompanied with such limitations as will not impair the equal enjoyment by others of their property. *Sic utere tuo ut alienum non lædas* is a maxim of universal application. *For the pursuit of any lawful trade or business the law imposes similar conditions. Regulations respecting them are almost infinite, varying with the nature of the business."*

Legislation respecting the trading-stamp business by Congress and many states differs so materially in scope, purpose, and effect, as well as in the restraints and compulsion imposed thereby, that judicial opinion respecting the same affords no general definite opinion regarding the competency of these legislative efforts. In the recent case of *State ex rel. Simpson v. Sperry & Hutchinson Co.* 110 Minn. 378, 126 N. W. 120, decided April, 1910, an act was held valid in so far as it prohibited the issuing of trading stamps redeemable in merchandise which depended upon chance, uncertainty, or contingency, but held that the trading-stamp business as conducted by the *Sperry & Hutchinson Company* was free from any of these elements; and also held that the provisions of the act which imposed restrictions and conditions whereby any stamp so issued was to state its face value and made separately redeemable in specified articles, was an unreasonable and arbitrary regulation and hence invalid. The court of appeals for the District of Columbia in the case of *Dist. of Columbia v. Kraft,* 35 App. D. C. 253, decided May, 1910, involving the inquiry whether or not the issuance of trading

stamps as usually issued by merchants and traders was forbidden by the act, exhaustively reviews the decisions of the courts on the subject in the several states, and separates and distinguishes the decisions of the different courts as to the statutes and questions involved in the litigation before such courts. The result of such investigation discloses a wide diversity of opinion as to the extent the legislature is empowered to regulate and prohibit the trading-stamp business as it is commonly conducted by dealers and merchants throughout the several states. We do not deem it necessary to point out the separate and detailed result of each of these adjudications for the purpose of indicating what bearing they respectively have upon the questions presented in the instant cases. We fully recognize that the holdings of some of the courts are to the effect that the trading-stamp business, when conducted as the plaintiffs in these cases conduct their trading-stamp business, is not subject to legislative regulation under the police power of the state. This conclusion seems to be based upon the reasoning that such business serves a useful and legitimate purpose and is not attended by any pernicious, harmful, or evil consequences. The supreme court of the United States in the cases of *Rast v. Van Deman & Lewis Co.* 240 U. S. 342, 36 Sup. Ct. 370; *Tanner v. Little,* 240 U. S. 369, 36 Sup. Ct. 379; and *Pitney v. Washington,* 240 U. S. 387, 36 Sup. Ct. 385, decided in March, 1916, exhaustively considers the subject of the power of the legislature to regulate the use of profit-sharing coupons or trading stamps under the police power. Upon hearing and extended argument the court held that the scheme and practice of issuing such trading stamps in connection with the conduct of a lawful business as commonly practiced and the redemption thereof in articles of merchandise or premiums in addition to the articles sold is attended with evil and pernicious consequences, which have a tendency to affect the general welfare similar in effect to the evils attending a "lottery" and "gam-

ing." The court observed: "It is the duty and function of the legislature to discern and correct evils, and by evils we do not mean some definite injury *but obstacles to a greater public welfare."* Speaking of the character of the scheme of conducting the business with which the court was then dealing, it is stated:

"With this comment we may say that all of the schemes have a common character—something is given besides that which is or is supposed to be the immediate incentive to the transaction of sale and purchase, or something of value given other than it." 240 U. S. 360.

In answer to the claim that the schemes embodied in the conduct of the trading-stamp business are but a lawful method of advertising, and an enterprise merely incidental to the conduct of a lawful calling, and as beneficial to the customer as to themselves, by granting a discount or rebate upon the price or an equivalent by the gift of some useful article of definite value, the court declares:

"These contentions have the support of a number of cases. They are opposed by others, not nearly so numerous as the supporting cases but marking a change of opinion. Both sets of cases indicate by the statutes passed upon a persistent legislative effort against the schemes under review or some form of them, beginning in 1880 and repeated from time to time until the statute in controversy was passed in 1913." 240 U. S. 363.

We are persuaded that those decisions should be followed, in that the trading-stamp schemes, as complainants in the instant cases have evolved and applied them in the conduct of their business, result in pernicious and evil effects and that the purchasers are subjected to the following evils:

"They rely upon something else than the article sold. They tempt by a promise of a value greater than that article and apparently not represented in its price, and hence it may be thought that thus by an appeal to cupidity lure to improvidence. This may not be called in an exact sense a 'lottery,' may not be called 'gaming;' it may, however, be considered

as having the seduction and evil of such, and whether it has may be a matter of inquiry, a matter of inquiry and of judgment that it is finally within the power of the legislature to make—certainly in the first instance, and, as we have seen, its judgment is not impeached by urging against it a difference of opinion. *Chicago, B. & Q. R. Co. v. McGuire,* 219 U. S. 549, 31 Sup. Ct. 259; *German Alliance Ins. Co. v. Lewis,* 233 U. S. 389, 34 Sup. Ct. 612. And it is not required that we should be sure as to the precise reasons for such judgment or that we should certainly know them or be convinced of the wisdom of the legislation. *Southwestern Oil Co. v. Texas,* 217 U. S. 114, 30 Sup. Ct. 496; *Munn v. Illinois,* 94 U. S. 113." 240 U. S. 365.

We recognize the foregoing consideration of that court as expressive of the true basis of the legislation embodied in ch. 480, which is here assailed as unconstitutional. There is manifestly a wide-spread belief that the scheme of conducting the trading-stamp business has in it the lure which leads to deception and improvidence of the buyer, which are adverse and injurious to the public interests and general welfare. While the different schemes detailed in the complaint of the plaintiffs in these actions do differ in some respects from those involved in the foregoing cases before the federal supreme court, yet in their essential features they are identical in so far as they affect the public generally and subject it to the general principles of legislative regulation and prohibition within the police power of the state. *Tanner v. Little,* 240 U, S. 369, 36 Sup. Ct. 379. It is urged that the act in question deprives the plaintiffs of constitutional rights recognized by this court in *Bonnett v. Vallier,* 136 Wis. 193, 116 N. W. 885; *State ex rel. Winkler v. Benzenberg,* 101 Wis. 172, 76 N. W. 345; *State v. Redmon,* 134 Wis. 89, 114 N. W. 137, and other cases in this and other states holding that:

"A police regulation must not extend beyond that reasonable interference which tends to preserve and promote enjoyment, generally, of those 'unalienable rights' with which 'all men are endowed' and to secure which 'governments are

instituted among men,' and must not violate any express pro-
hibition or requirement of the state or national constitution."
136 Wis. 201.

The principles of these decisions do not conflict with the
holding that the trading-stamp business as now conducted is
subject to regulation and prohibition in an appropriate and
constitutional manner. The law on the subject as embodied
in the decided cases shows that the police power is held to in-
clude all those regulations which promote the general inter-
est and prosperity of the public generally. We acquiesce in
this view and hold that the legislature did not exceed its
power by the enactment of ch. 480, Laws 1917. *State v.
Wilson* (Kan.) 168 Pac. 679.

It is claimed that the part of the act providing "that any
manufacturer, packer or dealer may issue any slip, ticket, or
check with the sale of any goods, wares or merchandise, which
slip, ticket or check shall bear upon its face a stated cash
value and shall be redeemable only in cash for the amount
stated thereon, upon presentation in amounts aggregating
twenty-five cents or over of redemption value, and only by the
person, firm or corporation issuing the same," violates ac-
cepted constitutional principles of classification and deprives
plaintiffs of the equal protection of the law. The scope of the
legislative power to distinguish and classify objects of legis-
lation has been repeatedly passed upon by this court.

"Each new exercise of the power of police regulation pre-
sents anew to the courts the question of possible relationship
between the distinguishing characteristics of the classes and
the object and purposes of the regulation." "The question to
be considered, however, is the distinction between the classes
as classes, whether there are characteristics which, in a greater
degree, persist through the one class than in the other which
justify legal discrimination between them." *State v. Evans,*
130 Wis. 381, 110 N. W. 241.

The distinction between the dealers who use tokens and
coupons as trading stamps redeemable in articles of merchan-

dise, whether by themselves or third parties, and dealers who issue them as a cash discount of a specified sum payable in cash by the dealer only, is a pronounced one. We have above indicated that the business of using trading stamps in ways and manners disclosed in the complaints of the parties to these actions has incidents and tendencies of such a pernicious character that justified legislative interference for the correction of the evils. It is manifest that there is a clear and well defined distinction between such practices and that of issuing a "slip, ticket, or check" which bears upon its face a stated cash value "redeemable only in cash" by the person issuing them, and that this practice is wholly different in effect on the purchaser than those detailed in the complaint. These distinctions in the conduct of the trading-stamp business are emphasized in the *Rast* and *Tanner Cases* as good ground for different legislative treatment in regulating the business and serve as a basis for a proper and appropriate classification within the principles recognized in the decisions on the subject by this court.. See cases cited in *State v. Evans,* 130 Wis. 381, 110 N. W. 241, and *Kiley v. C., M. & St. P. R. Co.* 138 Wis. 215, 222, 223, 119 N. W. 309, 120 N. W. 756.

"It is the duty and function of the legislature to discern and correct evils, and by evils we do not mean some definite injury *but obstacles to a greater public welfare*" (citing). "And, we repeat, it may make discriminations if founded on distinctions that we cannot pronounce unreasonable and purely arbitrary." *Rast v. Van Deman & Lewis Co.* 240 U. S. 342, 36 Sup. Ct. 370.

When the purchaser and seller understand that the token, coupon, or stamp issued with the sale of goods is of a stated cash value, redeemable in cash and only by the person issuing it, the transaction thereby becomes purged of the objectionable features and influences which such legislation condemns, and it follows naturally and logically that the legislative function has been properly exerted by enactment of the exception above quoted to remedy the evil incident to the un-

restricted use of the trading stamps.   Since, then, this exception is not discriminating and does not deprive persons of the equal protection of the law, the claim that it infringes upon their property, contract, and private business rights is not well founded and does not require further consideration. The claim that the statute deprives the plaintiffs of their right to contract seems to be predicated on the grounds that the plaintiffs are deprived of this right in carrying on a lawful business and that rights connected with existing contracts are infringed.   The terms of the statute are prospective in their operation and hence do not interfere with the enforcement of contract provisions that have been executed before it became effective on January 1, 1918.   It is an accepted rule that a subject within the legislative power to regulate, of necessity makes contracts in relation thereto subject to regulation.   The terms of the act being prohibitory of the trading-stamp business as therein specified, it must follow that the right to contract concerning the business is necessarily confined within the limits that the regulations prescribe.

It is contended that the penalties prescribed by the statute are so excessive and severe, in view of the nature of the act it penalizes, as to intimidate persons from resort to the courts in defense of legal rights involved in an alleged violation of it and thus denies persons due process and equal protection of the law.   This claim is urged upon the authority of *Bonnett. v. Vallier,* 136 Wis. 193, 116 N. W. 885.   In that case the penal features of the act there in question were found to be so involved in complexity as to make a good-faith resistance to an alleged violation thereof a most hazardous undertaking by exposing the accused to a system of penalties which increased from time to time if the resistance to the prosecution was not successful, and thus practically compelled persons to refrain from defending against any prosecution.   The terms of the statute before us are simple and clear and readily understood by the lay mind, and hence inform him what acts are condemned by it.   Under these facts and conditions persons

accused of violating the act are in no way subject to a scheme of penalties complex in their features nor accumulative in character as were those involved in the statute under consideration in the *Bonnett Case.* We find nothing in the penal features of the act to sustain the contention that it deprives of liberty and property rights without due process of law.

The provision prescribing that any "slip, ticket, or check" issued by a manufacturer, packer, or dealer shall be redeemed by him "upon presentation in amounts aggregating twenty-five cents or over of redemption value" is reasonable in its requirements and meets a practical exigency in the conduct of business affairs. It was evidently designed to prevent imposition of conditions in using such coupons which would harass the purchaser or seller with redemption in very small amounts and thus prevent their practical usefulness.

*By the Court.*—It is considered, ordered, and adjudged that neither of the several complaints states facts sufficient to constitute a cause of action for the relief demanded therein; that the demurrers to the several complaints be sustained; and that the several complaints be dismissed, with costs in favor of the defendants in each of said actions.