# STATE OF MARYLAND

*vs.*

## J. M. SENEY COMPANY.

*Statutes: constitutionality of—; presumption; duty of courts.*
*Police power: extends to general welfare.  Trading stamps:*
*Chapter 704 of Acts of 1916; valid exercise of police*
*power.  Criminal statutes: parties not within*
*unlawful discrimination cannot raise*
*that objection.*

When the constitutionality of a statute is in question it is entitled to the benefit of every reasonable presumption in favor of its validity  Section 173 of Chapter 704 of the Acts of 1916, requiring a license fee of $1,500.00 of persons, firms, associations or corporations engaged in the business of selling and delivering trading stamps, coupons, tickets or similar devices which are or may be redeemable in merchandise, is a competent exercise of the State's police power, and is valid.      p. 448

The police power of a State extends not only to the protection of public health, morals and safety, but also to the promotion of the general welfare.                          p. 447

An essential right of the police power is to classify the conditions under which the power is applicable.          p. 448

The fact that the statute exempts from the license charge any manufacturer or packer who issues such stamps, etc., in connection with his own products, is not such an arbitrary discrimination as to affect the validity of the Act.          p. 450

The fact that the statute is not made applicable to such stamps, etc., redeemable in cash, as well as to those redeemable in merchandise, does not render it void.          p. 451

Where a traverser does not belong to either of two classes against which a statute is claimed to be arbitrarily discriminatory and therefore unconstitutional, he can not pertinently raise that objection on an appeal involving the validity of the Act.                                                    p. 452

*Decided May 14th, 1919.*

Appeal from the Criminal Court of Baltimore City. (DOBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and ADKINS, JJ.

*Philip B. Perlman, Assistant Attorney General,* (with whom were *Albert C. Ritchie, Attorney General,* and *Lindsay C. Spencer, Assistant State's Attorney for Baltimore City,* on the brief), for the appellant.

*Wm. M. Ballou* (with whom was *J. Straitts Briscoe* on the brief), for the appellee.

URNER, J., delivered the opinion of the Court.

By section 173 of Chapter 704 of the Acts of 1916 an annual license fee of $1,500 is required to be paid before any person, firm, association or corporation can lawfully "sell or deliver any stamps, coupons, tickets, certificates or other similar devices which are or may be redeemable for merchandise" "to any other person, firm, association or corporation, in connection with any sale by such other person, firm, association or corporation, of any goods, wares or merchandise." The defendant corporation was indicted for selling and delivering certain stamps of the kind and for the use mentioned in the Act without paying the license fee thereby imposed. Special pleas to the indictment were filed describing

the nature and processes of the defendant's business, asserting that it is a legitimate undertaking, and charging that the requiremnt of the license fee in question is prohibitive in effect and unreasonable in its discriminations, and is therefore unconstitutional and void. A demurrer to the pleas was overruled and from the judgment thereupon entered discharging the defendant the State has appealed.

The business in which the defendant is engaged, as shown by its pleas, is exclusively a trading stamp enterprise. Its operations consist solely of the sale of trading stamps to merchants for issue by them to purchasers for cash in the course of their retail trade and redeemable by the defendant when presented in books containing 990 stamps in cash or in merchandise, at the customer's option. The cash redemption value of a full book of stamps is $2.00, but when redeemed in merchandise it represents a higher valuation. Consequently about eighty per cent. of the redemptions are in merchandise. The license fee referred to is not required from merchants issuing and redeeming their own stamps, or from those engaged in the business of providing others with stamps which are redeemable simply in cash. It is exacted only when the stamps are issued to merchants by a trading stamp dealer and "are or may be redeemable for merchandise," and that is the kind of business with which we are now concerned. The question to be decided is whether a business of that nature can be suppressed by the Legislature, such being the effect of the trading stamp license provision of the Act of 1916, according to the allegation of the pleas and the admission of the demurrer.

In three recent cases the Supreme Court of the United States has decided that the use of trading stamps, redeemable in articles of merchandise, is subject to regulation, restriction or prohibition by a State in the exercise of its police power, and hence is not within the protection of the Federal Constitution. *Rast* v. *Van Deman & Lewis Co.,* 240 U. S. 342; *Tanner* v. *Little, Id.* 369; *Pitney* v. *Washington, Id.* 387. These decisions were based on the theory that such a busi-

ness is not so clearly devoid of any injurious effect upon the public welfare as to justify a judicial declaration that the effort of the Legislature to apply the police power to the subject is manifestly arbitrary and unreasonable and therefore ineffective. The considerations supporting this view were stated in part as follows:

"There are many lawful restrictions upon liberty of contract and business. It would be an endless task to cite cases in demonstration, and that the supplementing of the sale of one article by a token given and to be redeemed in some other article has accompaniments and effects beyond mere advertising, the allegations of the bill and the arguments of counsel establish. Advertising is merely identification and description, apprising of quality and place. It has no other object than to draw attention to the article to be sold, and the acquisition of the article to be sold constitutes the only inducement to its purchase * * *."

"The schemes of complainants have no such directness and effect. They rely upon something else than the article sold. They tempt by a promise of a value greater than that article and apparently not represented in its price, and it hence may be thought that thus by an appeal to cupidity, lure to improvidence. This may not be called in an exact sense a 'lottery,' may not be called 'gaming'; it may, however, be considered as having the seduction and evil of such, and whether it has may be a matter of inquiry,—a matter of inquiry and judgment that it is finally within the power of the Legislature to make. Certainly in the first instance, and, as we have seen, its judgment is not impeached by urging against it a difference of opinion. *Chicago, B. & Q. R. Co.* v. *McGuire,* 219 U. S. 549, and *German Alliance Ins. Co.* v. *Lewis,* 233 U. S. 389. And it is not required that we should be sure as to the precise reasons for such judgment, or that we should certainly know them or be convinced of the wisdom of the legislation. *Southwestern Oil Co.* v. *Texas,* 217 U. S. 114, 126, 127. See also *Munn* v. *Illinois,* 94 U. S. 113, 132."

"But it may be said that judicial opinion can not be controlled by legislative opinion of what are fundamental rights. This is freely conceded; it is the very essence of constitutional law, but its recognition does not determine supremacy in any given instance. 'While the courts must exercise a judgment of their own, it by no means is true that every law is void which may seem to the judges who pass upon it excessive, unsuited to its ostensible end, or based upon conceptions of morality with which they disagree. Considerable latitude must be allowed for differences of view as well as for possible peculiar conditions which this Court can know but imperfectly, if at all * * *.' *Otis* v. *Parker,* 187 U. S. 606, 608, 609." *Rast* v. *Van Deman & Lewis Co., supra,* 365, 366.

In *Tanner* v. *Little, supra,* at page 384 of the opinion, the Court repeats that the so called "'premium system' is not one of advertising merely. It has other, and, it may be, deleterious, consequences. It does not terminate with the bringing together of seller and buyer, the profit of one and the desire of the other satisfied, the article bought and its price being equivalents. It is not so limited in purpose or effect. It has ulterior purpose, and how it has developed complainants vividly represent by their averments. It appears that companies are formed, called trading stamp companies, which extend and facilitate the scheme, making a seller of merchandise their agent for the distribution of stamps to be redeemed by them, or other merchants, the profit of all being secured through the retail purchaser who has been brought under the attraction of the system. There must, therefore, be something more in it than the giving of discounts, something more than the mere laudation of wares. If companies—evolved from the system, as counsel say in justification of them—are able to reap a profit from it, it may well be thought there is something in it which is masked from the common eye, and that the purchaser at retail is made to believe that he can get more out of the fund than he has put into it, something of value which is not offset in the prices or quality of the articles which he buys. It is certain that the prices he pays make the

efficiency of the system and the fund, if we may individualize it, out of which the cost of the instruments and agents of the system must be defrayed and the profit to all concerned paid. The system, therefore, has features different from the ordinary transactions of trade which have their impulse, as we have said, in immediate and definite desires having definite and measurable results. There may be in them at times reckless buying, but it is not provoked or systematized by the seller.

"Complainants charge that the tax of the statute is not upon the business, but upon its incidents. The separation is artificial. It is the incidents which give character to the business, affecting it with evil, it was thought, provoking therefore against it the power of the State, and taking away from it the immunity it else might have.

It is unimportant what the incidents may be called, whether a method of advertising, discount giving, or profit sharing. Their significance is not in their designations, but in their influence upon the public welfare. And of this the judgment of the Legislature must prevail, though it be controverted and opposed by arguments of strength. Nor is there support of the system or obstruction to the statute in declamation against sumptuary laws, nor in the assertion that there is evil lesson in the statute, nor in the prophecies which are ventured of more serious intermeddling with the conduct of business. Neither the declamation, the assertion, nor the prophecies can influence a present judgment. As to what extent legislation should interfere in affairs political, philosophers have disputed and always will dispute. It is not in our province to engage on either side, nor to pronounce anticipatory judgments. We must wait for the instance. Our present duty is to pass upon the statute before us, and if it has been enacted upon a belief of evils that is not arbitrary, we cannot measure their extent against the estimate of the Legislature. *McLean* v. *Arkansas,* 211 U. S. 539. Such belief has many examples in State legislation, and, we have seen, it has persisted against adverse judicial opinion. If it may be said to be a judgment from

experience as against a judgment from speculation, certainly, from its generality, it can not be declared to be made in mere wantoness. *Central Lumber Co.* v. *South Dakota,* 226 U. S. 157, 160; *Purity Extract & Tonic Co.* v. *Lynch,* 226 U. S. 192, 204, 205."

In each of the cases cited the statute under consideration imposed a license charge which was alleged and assumed to be prohibitive of the particular use of the trading stamps there involved. But it was held that it was competent for the Legisture to give the license such effect under the police power of the State, as to which the Court said: "We will not here define it or its limitations. As was said by MR. JUSTICE BROWN, in *Camfield* v. *United States,* 167 U. S. 518, citing *Rideout* v. *Knox,* 148 Mass. 368: 'The police power is not subject to any definite limitations, but is coextensive with the necessities of the case and the safeguard of the public interests.' "

It was stated by the Court in the *Tanner case,* as it had remarked also in effect in the *Rast case,* that it was not then "concerned with consideration of a business in which coupons, etc., are issued or used and not redeemed in merchandise; that is, where they are used as a rebate upon the price of the article or a discount upon purchases, nor with the legality of a statute which should regulate or prevent such use of the coupons disassociated from other uses of them."

The appeal in *Pitney* v. *Washington, supra,* resulted in the affirmance of a judgment of the Supreme Court of the State of Washington, which overruled the previous decision of that Court in *Leonard v. Bassindale,* 46 Wash., 301, holding unconstitutional a statute by which the use of trading stamps was prohibited. The earlier ruling of the Washington Court had followed the general trend of judicial opinion on the subject at that period, but that Court reached a different conclusion in the *Pitney case,* in view of the scope and effect given to the police power by decisions of the Supreme Court of the United States. *State v. Pitney,* 79 Wash. 608; 80 Wash. 699, 140 Pac. 918. In discussing the question whether

a state of facts could exist which might reasonably have induced the Legislature to forbid the use of trading stamps in connection with the sale of merchandise, the Supreme Court of Washington said: "It might reasonably be supposed or presumed that the Legislature believed that the use of these stamps would encourage indiscriminate and unnecessary purchasing by people ill able to indulge in any extravagance. Or suppose that the Legislature believed that the use of these stamps was practically forced upon certain merchants without any practical benefit resulting therefrom, and thus they were compelled to pay 3½ per cent. upon their gross sales for the use of the stamps. The Legislature might reasonably have believed that the stamp companies, in order to cause the stamps to be used in a certain city, would contract with one merchant for their use, agreeing to pay him a percentage of the sums collected by them from other merchants, and then use the first contract so secured to force other merchants into using the stamps or suffer loss of trade by failure so to do. In other words, that legitimate business was virtually coerced into paying tribute to the stamp company, a non-producer of wealth or value."

In *State* v. *Wilson* (Kan.), 168 Pac. 679, a prohibitory license charge for the use of trading stamps under a statutory provision of the general nature of the one with which we are dealing in this case was sustained upon the authority of the Federal Supreme Court decisions which we have cited. The Kansas Court said: "If the legislation under consideration is a proper exercise of the police power, it violates neither the State nor the Federal Constitutions. If it is not, it violates both. Therefore, although this Court has the power to hold it invalid because in conflict with the fundamental law of this State, it can do so only by rejecting the reasoning upon which the decision of the Supreme Court of the United States is based, and taking a narrower view of the police power of the State than that adopted by the Federal Court * * * The question for our determination is not whether in our judgment the objections urged against the

trading stamp device, on which the statute is based, are
sound, but whether they are so plainly unsound that they
may confidently be characterized as unreasonable and capri-
cious. 'If it has been enacted upon a belief of evils that is
not arbitrary, we can not measure their extent against the
estimate of the Legislature.' *Tanner* v. *Little,* 240 U. S. 385.
The fact that in a majority of the States of the Union some
form of repressive legislation against trading stamps has
been undertaken, and that the Parliament of Canada has
prohibited their use, is evidence of a widespread belief in
their pernicious influence."

The Supreme Court of Indiana in an opinion disposing of
the trading stamp license case of *Sperry & Hutchinson Co.*
v. *State,* 122 N. E. 584, decided March 26th, 1919, adopted
the principles applied by the Federal Supreme Court in the
cases of *Rast* v. *Van Deman & Lewis Co., Tanner* v. *Little,*
and *Pitney* v. *Washington, supra,* but held the particular
statute under inquiry void for an arbitrary discrimination
against those engaged in the sale of trading stamps for
redemption in articles not of their own manufacture.

In the Michigan case of *People* v. *Sperry & Hutchinson
Co.,* 164 N. W. 503, the Supreme Court decisions we have
referred to were considered, and while no disagreement was
expressed as to the principles therein declared, the trading
stamp license law under consideration was held invalid as
involving an unreasonable discrimination among those en-
gaged in the business.

The Supreme Judicial Court of Massachusetts in an
advisory opinion rendered in response to an inquiry in April,
1917, from the Senate of that State, as to whether a pro-
posed act forbidding the use of trading stamps redeemable
by anyone other than the vendor would be constitutional,
stated that no such distinction could be made under the State
Constitution in view of the Court's previous decisions. After
referring to the three decisions of the United States Supreme
Court that such legislation does not conflict with the Four-
teenth Amendment of the Federal Constitution, the Massa-

chusetts Court said: "But the question whether a statute is in conflict with the provisions of the Constitution of this Commonwealth is a question upon which the decision of the Supreme Judicial Court of this Commonwealth is final. It is established also that in answering questions submitted to them under the Constitution to attempt to overrule a decision made by the Court in a case between party and party or to speculate upon the correctness of such a decision, if such a decision is to be overruled, it can be only after argument in another case between party and party, where the rights of all can be fully guarded. It can not be overturned by an advisory opinion of the Justices given without the benefit of argument."

In *Sperry & Hutchinson Co.* v. *Weigle* (Wis.), 166 N. W. 54, decided in January, 1918, the principles announced in the *Rast, Tanner* and *Pitney cases* were adopted and applied in a ruling that a statute prohibiting the issuance and use of trading stamps redeemable in merchandise was a valid exercise of the police power of the State and was not void for discriminating in favor of the use of trading stamps issued by a manufacturer, packer or dealer for redemption in cash.

In none of the trading stamp cases decided since the Supreme Court decisions referred to were rendered has there been disclosed any indisposition on the part of State tribunals to recognize the principle that the police power of the State may be extended to the prohibition of the use of trading stamps redeemable in merchandise, except in the instance of the advisory opinion of the Supreme Judicial Court of Massachusetts based upon the provisions of the State Constitution as applied by the previous rulings of that Court.

In the case of *State* v. *Caspare,* 115 Md. 7, decided some years before the Supreme Court passed upon the question we are now considering, it was held that the trading stamp business described by the testimony, which was similar to that affected by the statute before us, was a lawful undertaking, and that statutory restrictions which amounted to a practical

prohibition of the business could not be sustained as a proper exercise of the police power of regulation, but were repugnant to the Fourteenth Amendment to the Constitution of the United States. The decisions in the earlier cases of *State* v. *Hawkins,* 95 Md. 133, and *Long* v. *State,* 74 Md. 565, denied the power of the Legislature to prohibit gifts to purchasers of goods by the use of stamps or otherwise, as inducements to make the purchases, unless the gift enterprise involved an element of chance. These rulings were all in accord with the great weight of authority on the questions presented and with the view then prevailing as to the extent and limitations of the police power. In the process of the application of that power to new and varied conditions affecting the public welfare, it has been gradually extended beyond its original scope. It was formerly concerned with the protection of the public health, morals and safety. By our own recent decisions it is now recognized as extending to the promotion of the general welfare. *American Coal Co.* v. *Allegany County,* 128 Md. 573; *C. & P. Telephone Co. v. Board of Forestry,* 125 Md. 666.

The license provision resisted in this case was enacted upon the theory that the trading stamp business which it sought to suppress was detrimental to the welfare of the public, and the Supreme Court has held that such legislation is an exertion of the police power of the State and is consequently not in conflict with the Fourteenth Amendment to the Federal Constitution. That decision is of course conclusive of the question so far as the exemption of the statute from the effect of the provisions of the Constitution of the United States is concerned, and upon the same principle we will hold the Act to be excluded from the operation of the no more restrictive limitations of the Constitution of Maryland. In *American Coal Co. v. Allegany Co., supra,* we held that the Maryland Declaration of Rights and the Fourteenth Amendment of the Federal Constitution "were not intended to restrain the reasonable exercise of the police power by the State."

The Act of the Legislature which is here called in question is entitled to the benefit of every reasonable presumption in favor of its validity. If there is any rational theory upon which it can be sustained consistently with constitutional limitations, it is the duty of the courts to reach that conclusion. An exertion of the police power by the Legislature should not be held to be void if there are any considerations related to the public welfare by which it can be supported. With respect to the validity of legislation restraining the use of trading stamps, as an inducement to the purchase of goods, under the conditions mentioned in the present statute, the Supreme Court has referred to reasons which the legislative mind might have considered sufficient to justify the repression of such a practice, in the exercise of the police power, and which that Court was unable to regard as wholly inadequate and as having no conceivable proper relation to the welfare of the public. In view of the considerations which the Supreme Court has thus suggested in support of legislative authority to apply the police power to the trading stamp business, of the kind described in the pending indictment, we could not justly hold that action to this end by the Legislature of Maryland is altogether unreasonable and nugatory. It must be regarded as a competent exercise of the police power of the State.

The statute, however, exempts from the $1,500 license charge any manufacturer or packer who issues trading stamps or similar devices in connection with his own products. For the use of trading stamps under such conditions a license fee of only $50 is required to be paid. This classification is alleged to result in an arbitrary and unconstitutional discrimination. In our opinion the statute should not be held invalid on that ground. An essential element of the police power is the right of the Legislature to classify the conditions to which the power is applicable. There may be different phases or degrees of an injury to which the public is believed to be exposed and against which it is sought to be protected by measures of regulation and restraint properly differing in their nature and effect. Unless a classification adopted by

the Legislature in the application of the police power is plainly arbitrary and capricious, its judgment on the subject should be respected and sustained. *American Coal Co. v. Allegany County, supra; Ruggles v. State,* 120 Md. 561; *Holden v. Hardy,* 169 U. S. 395; *Barbier v. Connelly,* 113 U. S. 27; *Bowman v. Lewis,* 101 U. S. 22; *L'Hote v. New Orleans,* 177 U. S. 587. In the opinion of MR. JUSTICE McKENNA in *Turner v. Little, supra,* reference is made to classifications which have been upheld, as "between sales of stock upon margin or for immediate or future delivery (*Otis v. Parker,* 187 U. S. 606); between acts directed against a regularly established dealer and one not so established (*Central Lumber Co. v. South Dakota,* 226 U. S. 157); in an inspection law, between coal mines where more than five men are employed and coal mines where that or a lesser number are employed (*Consolidated Coal Co. v. Illinois,* 185 U. S. 203); and a like distinction in a workmen's compensation law (*Jeffrey Mfg. Co. v. Blagg,* 235 U. S. 571); between a combination of purchasers and a combination of laborers (*International Harvester Co. v. Missouri,* 234 U. S. 199); between residents and non-residents (*Travelers Ins. Co. v. Connecticut,* 185 U. S. 364); in a law requiring railroads to heat passenger coaches, between roads of fifty miles and roads of that length or less (*New York, N. H. & H. R. Co. v. New York,* 165 U. S. 628; see also *Dow v. Beidelman,* 125 U. S. 680; *Postal Teleg. Cable Co. v. Adams,* 155 U. S. 688); between theatres according to the price of admission (*Metropolis Theatre Co. v. Chicago,* 228 U. S. 61); between landowners as to liability for permitting certain noxious grasses to go to seed on the lands (*Missouri K. & T. R. Co. v. May,* 194 U. S. 267); between business in the solicitation of patronage on railroad trains and at depots (*Williams v. Arkansas,* 217 U. S. 79); and a distinction based on the evidence of the qualifications of physicians (*Watson v. Maryland,* 218 U. S. 179)."

The statute under consideration makes it evident that the Legislature regards the use of trading stamps, issued and re-

deemed in merchandise by those engaged separately in that business, as having incidents and tendencies which make the practice a proper subject of special restriction. There is a marked difference between the issuance and redemption of trading stamps by a manufacturer or dealer in the course of his own trade, and their introduction into his business by an outside enterprise operating solely for the profit to be derived from the sale and use of such devices. A difference of legislative treatment based upon so obvious a distinction between the classes with which the statute deals can not be held to be such an arbitrary and unreasonable discrimination as to render the license provision unconstitutional. In the case of *People v. Sperry & Hutchinson Co.* (Mich.), *supra,* where a statute prohibiting the use of trading stamps, except under certain conditions, was held to be void for arbitrary discrimination, a distinction was attempted to be made by the statute between merchants and manufacturers in the application of the law, the former being forbidden to issue the stamps unless redeemable by themselves, while the latter might properly issue them whether redeemable by themselves or by other persons. This was a much narrower distinction than the one drawn in the Maryland statute, and the same statement can be made as to the discrimination attempted in the Indiana statute against the use of trading stamps intended for redemption in articles not manufactured by those by whom the stamps were issued. *Sperry & Hutchinson* v. *State* (Ind.), *supra.* But in the case of *State* v. *Wilson* (Kan.), *supra,* it was held that a statute imposing a prohibitory license charge for the issuance of trading stamps to merchants for use in the sale of goods and redeemable in merchandise at less than its retail value, was not rendered void, for unreasonable discrimination, by a provision that it should not apply where the stamps were redeemable in cash or from the general stock of the merchant by whom they were used. In referring to this provision the Court said: "It may reasonably be believed that some of the evils attributed to the use of trading stamps will be obviated or lessened if they are made redeem-

able only in that manner.    It may not unreasonably be thought that the intervention between a merchant and his customers of a separate concern, making a business of exchanging a special line of goods for the stamps, tends to increase their seductive effect."    Reference has already been made to the case of *Sperry & Hutchinson Co.* v. *Weigle* (Wis.), 166 N. W. 54, in which it was held that a statute which prohibited the use of trading stamps redeemable in merchandise, and which exempted from such restraint the use of stamps used by a manufacturer, packer or dealer for redemption in cash, was not void on the ground of creating an illegal classification.

The conclusion we have reached and state upon the point just discussed disposes also of the further contention that the license provision in controversy unreasonably discriminates between those engaged in the trading stamp business alone and merchants who issue their own stamps redeemable in their own goods, the latter not being subjected to any license requirement.    Attention was called in the argument to an expression in the opinions in *Caspare* v. *State,* and *State* v. *Hawkins, supra,* that "whether or not the stamp is to be redeemed by the party selling the goods, wares or merchandise, or by a third party is not of itself material."    This was said in the discussion of the question whether the use of trading stamps under the statute and circumstances considered in those cases involved an element of chance, and the language quoted simply indicated the view of the Court that the relation to the transaction of the person making the redemption was immaterial as to that question.

The reasons which have led us to adopt the view we have indicated require us also to reject the theory that the license charge is void because it is not made applicable to the use of trading stamps redeemable in cash as well as to the use of those which are redeemed in merchandise.    There is a sufficient difference between the processes and effects of the two methods of redemption to afford a legitimate basis of classification for the purposes of the Act.

One of the defendant's pleas disputed the validity of the statute on the ground that it arbitrarily discriminates in its provisions between manufacturers and wholesale dealers in regard to the payment of a license fee for the use of trading stamps, but as the defendant does not belong to either of the classes between which the discrimination is said to occur it is clear that the objection is not pertinent to the present inquiry. *State* v. *Case,* 132 Md. 272, and cases there cited.

Another contention is that the statute has no application by its terms to those engaged in the trading stamp business who, like the defendant, redeem their stamps, if accumulated to a certain number, in cash, or in merchandise, at the option of the holder, but only to those who redeem in merchandise exclusively. The Act requires the license to be paid for the sale or delivery, under the conditions noted, of trading stamps "which are or may be redeemable for merchandise," and as the defendant's first plea admits that its stamps are redeemable in that manner, as well as in cash, the application of the statute to the defendant's business is entirely clear.

The action of the Court below in overruling the demurrer to the pleas was in accordance with views expressed in prior decisions of this Court, but in consequence of our revision of those views in this case, a reversal of the judgment will be necessary.

*Judgment reversed, with costs and case remanded.*