STATE EX REL. HICKEY, Relator, vs. LEVITAN, State Treasurer, and another, Respondents.

*May 15—September 17, 1926.*

*Constitutional law: Licenses: Of wholesale produce dealers: Valid classification: Essentials: Police power: Regulation of occupations: General welfare: Exempting persons from statute who are subject to regulation under other laws: Exempting co-operative associations whose members reside in same county: Vagueness of statute.*

1. Classification in a statute regulating the business of wholesale produce dealers must be germane to the purpose of the law, must not be limited to existing conditions only, and must apply equally to each member of the class; it may be unwise, however, from the popular viewpoint, unscientific or illogical, and it need not be all-inclusive or extend to all cases which it might legitimately include. pp. 651, 655.

2. All occupations are subject to regulation whenever and wherever it is necessary to promote the public welfare; and while the wholesale produce business does not touch the public interests to the same extent as does that of a public utility, it is nevertheless charged with a public interest. p. 652.

3. The subjects to be regulated and the order of their regulation are for the legislature, and when that body has acted within its proper province the courts cannot interfere. p. 652.

4. Substantial and material differences exist between the business of a wholesaler and a retailer in produce which justify the

State ex rel. Hickey v. Levitan, 190 Wis. 646.

enactment of measures regulating the business of the whole-saler and in no wise affecting the retailer. p. 654.

5. Sec. 99.32, Stats. (ch. 389, Laws of 1925), regulating the wholesale produce business, is not unconstitutional as class legislation because the main, if not the sole, purpose thereof is to protect producers and dealers who sell or consign prod-uce to wholesalers from fraudulent or unfair practices, or because many inhabitants of the state are not directly affected thereby. p. 656.

6. The express purpose of legislation enacted under the police power of the state is to prevent fraud or to promote the public health and the general welfare. p. 657.

7. The classification made by said sec. 99.32, Stats., is not im-proper because wholesale grain dealers subject to the juris-diction of the Wisconsin Grain and Warehouse Commission, under the Grain and Warehouse Commission Act (secs. 126.01 to 126.74), are exempt from the license provisions thereof, since such exemption must be construed to apply to such grain dealers only in so far as they confine their opera-tions to handling grain. pp. 659, 660.

8. Nor is said statute unconstitutional because of the delegation of legislative power to the state Department of Markets, as it is *held* that administrative power only has been conferred on the department. pp. 663, 665.

9. The classification made by said sec. 99.32 is *held* void, however, as class legislation under secs. 1 and 22, art. I, Const. Wis., and amendm. XIV, Const. U. S., in limiting the exemption of local co-operative organizations to those composed of members residing in the same county, and, as such invalidity involves a vital part of the classification, it vitiates the whole act, notwithstanding sub. (8), sec. 99.32. pp. 665, 666.

10. Statutes making the violation thereof punishable as a misde-meanor should be reasonably definite. p. 667.

11. Sec. 99.32, Stats., regulating the wholesale produce business and defining wholesale produce dealers as those who buy produce for resale "principally" to others than consumers, or agents selling produce principally to others than consumers, and making the violation thereof a misdemeanor, is *held* in-valid for indefiniteness, the word "principally" being a rela-tive term; and such invalidity extends to and makes the entire act invalid, notwithstanding sub. (8) of said section. pp. 667, 668.

THIS IS AN ACTION brought, by leave of court, under the original jurisdiction of this court to enjoin defendants in

their official capacities from enforcing the provisions of ch. 389 of the Laws of 1925, being sec. 99.32 of the Statutes, and from incurring any expenses or paying out any moneys on account of such act, for the reason that the act is unconstitutional, being violative of the Fourteenth amendment of the federal constitution and secs. 1 and 22 of art. I of the state constitution, and because the act is indefinite and therefore unenforceable.

Ch. 389 of the Laws of 1925, known as sec. 99.32 of the Statutes, reads as follows:

"An act to create section 99.32 and to amend subsection (2) of section 20.615, of the statutes, relating to the licensing, bonding and regulation of wholesale produce dealers, providing a penalty, and making an appropriation.

"The people of the State of Wisconsin, represented in Senate and Assembly, do enact as follows:

"Section 1. A new section is added to the statutes to read: 99.32 (1) The following terms, wherever used in this section or in any order issued hereunder, shall mean:

" 'Person' means any individual, partnership, corporation or association.

" 'Wholesale produce dealer' means a person who is engaged in the business of buying produce for resale principally to others than consumers or of acting as agent to sell produce principally to others than consumers, except (a) persons subject to the jurisdiction of the Wisconsin Grain and Warehouse Commission or of the United States Packers and Stockyards Administration and (b) local groups, corporate or otherwise, composed of individuals residing within the same county and buying principally from such individuals or acting as agent to sell principally for such individuals.

" 'Produce' includes all products of agriculture and horticulture and of livestock, poultry or bee raising and dairy products, raw or manufactured.

" 'Department' means the Wisconsin Department of Markets.

"(2) No person shall act or purport to act as wholesale produce dealer, after January 1, 1926, without a license issued by the department.

"(3) The department, upon application by a wholesale produce dealer, accompanied by fee of five dollars, and upon presentation of satisfactory evidence as to reputability and reliability of the applicant, and upon the filing of bond as herein provided, shall issue to such wholesale produce dealer a license to act as such. The application shall be in such form as the department may prescribe to show the reputability and reliability of the applicant. The bond shall be in such form and amount and with such surety or sureties as the department finds to be sufficient. Additional bond may be required by the department at any time when it finds that the existing bond has become insufficient. Each bond of the wholesale produce dealer shall be conditioned for the faithful performance of his duties as a wholesale produce dealer, for the observance of all laws relating to the carrying on of his business as a wholesale produce dealer, and for compliance with all general orders issued under this section.

"(4) Every license shall be in effect for a period of one year and, upon like conditions as are prescribed for the issuance of a license, shall be renewable from year to year.

"(5) The department, in the event that it refuses to issue or renew a license, shall issue a special order to this effect after opportunity for hearing has been granted to the applicant.

"(6) The department may, by special order, after opportunity for hearing has been granted the licensee, revoke any license, upon its finding that the licensee is not reputable or not reliable or has made false statements in order to obtain a license or has failed to furnish additional bond required or has violated any provision of any general order issued under this section.

"(7) The department may, after public hearing, issue such general orders as are reasonably necessary to assure fair business dealings by wholesale produce dealers with those persons from whom they buy produce or for whom they act as agent to sell produce.

"(8) The provisions of section 99.19 to 99.27, inclusive, and of section 99.30, shall apply to the enforcement of this section and to all orders issued hereunder.

"(9) Any person injured by the breach of any obligation which a bond hereunder is given to secure may sue on such

bond in his own name in any court of competent jurisdiction to recover the damages he may have sustained by such breach.

"(10) Any person who shall violate any provision of this section or of any general order issued hereunder shall be guilty of a misdemeanor and, for each and every offense, shall, upon conviction thereof, be punished by a fine not exceeding five hundred dollars or by imprisonment in the county jail not exceeding six months or by both such fine and imprisonment."

For the relator there was a brief by *Lueck, Clark & Lueck* of Beaver Dam, and oral argument by *Martin L. Lueck.*

For the respondents there were briefs by the *Attorney General* and *T. L. McIntosh* and *F. C. Seibold,* assistant attorneys general, and oral argument by *Mr. McIntosh* and *Mr. Seibold.*

A brief was also filed by *Bottum, Hudnall, Lecher & McNamara* of Milwaukee as *amici curiæ,* and oral argument by *Geo. B. Hudnall.*

DOERFLER, J.  The statute is a regulatory measure and applies to wholesale produce dealers, and within the purview of the definition of one engaged in this business are included not only the wholesaler who buys and sells on his own account, but also an agent who sells produce for consignors on commission.  The statute thus creates two classes of produce dealers,—the one the wholesaler, the other the retailer; the former selling to others than consumers, the latter disposing of his produce to the consumer.  This act attempts to regulate the business of the wholesaler, and in nowise affects the retailer, and therefore it is argued by the learned counsel for the plaintiff that the act does not operate in such a manner as to promote the public interests as a whole, but is designed to promote the welfare of only a very limited class, which embraces those who sell or con-

sign produce to the wholesaler, and that therefore in its practical effect it amounts to special legislation; that if the public interest requires the regulation of the produce dealer, the legislature should have selected the retailer and not the wholesaler, for the reason that the former in his dealings comes into direct contact with the consuming public; that there exists no legitimate distinction between the two classes which can form the basis of a classification; and that therefore such classification is arbitrary and void.

The statute was enacted under the police power of the state, and was inspired on the part of the law-making body to prevent certain abuses which either had arisen and prevailed in the business, or which were likely to arise because of certain alleged peculiarities existing in the business. In order that a classification such as is here attempted may be held lawful it must be germane to the purpose of the law; it must not be limited to existing conditions only; and it must apply equally to each member of the class. *Borgnis v. Falk Co.* 147 Wis. 327, 133 N. W. 209.

Is the classification thus attempted by the legislature based upon substantial distinctions which constitute real differences between the classes? If not, it is arbitrary and void. While the pursuit of the wholesale produce business is not of recent origin, its growth in latter years has been tremendous, and it has maintained a pace that corresponds with the cultivation of the vast farming areas of the country and the creation and building up of large congested urban centers. Therefore, while in the period of the early history of the state and of the country it was not deemed necessary or advisable to regulate this business, the time has finally arrived where the law-making body realized that in order to promote the general welfare some regulation was necessary, and in this state it proceeded to enact the statute which is now under consideration.

The wholesale produce business does not touch the public

State ex rel. Hickey v. Levitan, 190 Wis. 646.

interests to the same extent as does that of a public utility, but that it is charged with a public interest cannot be denied. All the various occupations in which our inhabitants may be engaged are subject to regulation whenever and wherever it is necessary to promote the public welfare, and nearly every measure which has had a tendency to infringe even in the slightest degree upon personal initiative has met with opposition not unlike that which is presented in this case.

Here it may also be conceded that the retail produce dealer in his business comes in more direct and closer contact with the public interests than the wholesaler, and that perhaps it would have been wiser to have started with the general scheme, to regulate the retailer before enacting the measure affecting the wholesaler. Briefly stated, however, we are not concerned with the wisdom embraced in the particular act, especially in so far as it may involve a general scheme of regulation. The subjects to be regulated, and the order of their regulation, are inherent in the prerogatives of the law-making body, and when such body has acted within a proper province and in a proper manner the courts cannot interfere.

Wisconsin is primarily an agricultural state, notwithstanding its inhabitants have established and maintain diversified industries. The persons regulated by the act are those who deal in the products of the farm. The raising of agricultural and kindred products constitutes not only a basic industry of this state but of every state, for such products are an absolute essential to the sustenance and well-being of the human race. During recent years an ever-increasing volume of the products of agriculture has found its way into avenues operated and controlled by the wholesale produce dealer. The wholesaler oftentimes is separated from his consignor by long distances. In many instances he has no personal acquaintance with either the dealer or the

producer from whom he buys or those whom he represents as an agent. The produce received by him comes in large quantities, and usually in carload lots. Oftentimes he does not obtain physical possession at his place of business of either the produce bought or that consigned; he contracts for the sale either to the retailer or to the wholesaler by wire or by telephone, and the produce moves on to the ultimate purchaser without an actual or physical inspection. Large consignments are sold and resold by mere samples. So that it becomes apparent that vast opportunities are afforded for irregular, unfair, and fraudulent practices. Nor is it necessary in all cases for the wholesaler in produce to maintain a large stock on hand, as is customary with other wholesalers in other lines of business. Therefore, a large wholesale dealer may by wire contract for the immediate sale of the produce purchased by him or consigned to him for resale on commission, leaving nothing which has tangibility for the producer or dealer to resort to, creating a situation where the wholesaler may disappear with the proceeds derived from the produce, to the great detriment of those who have placed trust and confidence in him.

The great bulk of the produce handled by the wholesaler is highly perishable. It may leave the original dealer or producer in perfect form, and yet, on account of conditions over which they have no control, the produce may deteriorate or become absolutely worthless, or it may become the subject of fraudulent manipulation, and no proper record may be available as to the cause of such total or partial deterioration, destruction, or manipulation. Prices of agricultural products constantly fluctuate, depending either upon the law of supply and demand, weather conditions, or artificial manipulations by dealers or *quasi*-public bodies. The difference in time between the consignment and the receipt at its place of destination may mark a material and substantial change in the market price available

for the produce; and while this is true with all agricultural produce, it is particularly so with grains, for the latter are more susceptible to the controlling influence of world conditions.

These are some of the facts which we must assume were in the minds of the legislators when they enacted the statute before us for consideration, and they constitute substantial and material differences existing between the business of a wholesaler and a retailer in produce, and justify the classification made.

While opportunities for fraudulent practices exist in the retail trade, the same are readily discovered and are not difficult to rectify, and an adjustment can be easily made with but small expense. The retail dealer as a rule is definitely established with his business in a certain community; he comes in close contact with his customers, with whom he has a personal and close relationship. He is established with a local reputation for fair dealing or otherwise. He therefore possesses an element of business stability which is largely lacking with the wholesaler. Therefore it is within the proper province of the legislature to place the retailer in a class in which there is no regulation or license provided and where no bond or other security may be required.

That there is a material and substantial distinction in principle between a wholesaler and retailer, in so far as classification is concerned, is pointed out in *Cook v. Marshall County*, 196 U. S. 261, 274, 25 Sup. Ct. 273, where it is said:

"There is a clear distinction in principle between persons engaged in selling cigarettes generally or at retail, and those engaged in selling by wholesale to customers without the state. They are two entirely distinct occupations. One sells at retail, and the other at wholesale; one to the public generally, and the other to a specified class; one within the state, the other without. From time out of mind it has

been the custom of Congress to impose a special license tax upon wholesale dealers different from that imposed upon retail dealers. A like distinction is observed between brewers and rectifiers, wholesale and retail dealers in leaf tobacco and liquors, manufacturers of tobacco and manufacturers of cigars as well as peddlers of tobacco. It may be difficult to distinguish these several classes in principle, but the power of Congress to make this discrimination has not, we believe, been questioned."

See, also, *State v. Bowen & Co.* 86 Wash. 23, 149 Pac. 330; *State ex rel. Brewster v. Mohler,* 98 Kan. 465, 158 Pac. 408; *Southwestern Oil Co. v. State,* 217 U. S. 114, 30 Sup. Ct. 496; *State ex rel. Beek v. Wagener,* 77 Minn. 483, 80 N. W. 633.

The classification may be unwise from the popular viewpoint, and may be condemned by economists; "it may be unscientific or illogical; it need not be all-inclusive or extend to all cases which it might legitimately include. But it must apply equally to each member of a class." *Kreutzer v. Westfahl,* 187 Wis. 463, 482, 204 N. W. 595; *State v. Evans,* 130 Wis. 381, 110 N. W. 241; *Borgnis v. Falk Co.* 147 Wis. 327, 133 N. W. 209; *Peterson v. Widule,* 157 Wis. 641, 147 N. W. 966; *Trading Stamp Cases,* 166 Wis. 613, 166 N. W. 54; *Pinkerton v. Buech,* 173 Wis. 433, 181 N. W. 125. The mere classification, therefore, by the legislature of produce dealers generally, constitutes a valid enactment, unless for other reasons hereinafter specifically set forth such classification be held unconstitutional and void.

It is next urged by the learned counsel for plaintiff that the business of a wholesale produce dealer is a legitimate business, and that the right to conduct the same is a property right, and that such right cannot be taken away or abridged by the exercise of the police power, unless it appears that the interests of the public generally, as distin-

guished from those of a particular class, require such interference. In brief, counsel here contend that the legislation is class legislation and is for that reason void.

The act contains a provision which requires the giving of a bond conditioned, among other things, upon the faithful discharge of the duties of the principal and his compliance with the law and the rules and regulations prescribed by the commission. It also contains a provision whereby persons who suffer damages by reason of improper or wrongful practices, or in consequence of a breach of the conditions of the bond, may bring suit against the wholesaler on the bond. It must also be conceded that the main, if not the sole, purpose of the legislation is to protect producers and dealers who sell or consign produce to wholesalers from fraudulent or unfair practices. The prevention of fraud is a subject in which the public at large is vitally interested. It may be true that many of the inhabitants of this state are not directly affected by the protective features in the act, although the persons engaged as producers of produce and those engaged as dealers in produce, who sell to the wholesaler, constitute a very large class; but the class is not a closed class, but an open one, and any one at any time may receive the protection afforded by becoming a producer or a dealer in produce and in selling or consigning produce to a wholesaler. There are few regulatory measures passed under the police power of the state which affect directly every citizen of the state. If that were necessary, few of the innumerable police regulations could be held valid. We have laws which regulate the ownership and operation of automobiles, and yet all persons are not the owners of such machines. Numerous other instances illustrative of the point here attempted to be made might be cited, but they are within the common knowledge of every one, and to refer to them in detail would serve no useful purpose. The point here made by the

learned counsel for the plaintiff has been exhaustively treated in the case of *Hawthorn v. People,* 109 Ill. 302, 311, and we approve of the logic contained in the opinion in that case. See, also, *Mathison v. Minneapolis St. R. Co.* 126 Minn. 286, 148 N. W. 71, and numerous cases cited therein.

The legislature has deemed it necessary to provide for exceptions to the general definition of a wholesale produce dealer, and among the persons so excepted are those subject to the jurisdiction of the Wisconsin Grain and Warehouse Commission. The effect of this exception is to create a new and distinct class, and those coming under this class, by express terms, are exempted from the license provisions required of wholesale produce dealers. It is therefore strenuously argued by counsel appearing as *amici curiæ* that this exemption creates an improper classification and is therefore void. It is contended that a wholesale dealer in grain at Superior, or one who sells grain to others than consumers, does not come under the act herein involved, while persons engaged in a similar business in other parts of the state must obtain a license and comply with the provisions of the act herein involved; that there is no valid distinction between the two classes to warrant this exception; and that the exception creates an unjust discrimination in favor of grain dealers and brokers who come under the jurisdiction of the Wisconsin Grain and Warehouse Commission.

It is the express purpose of all legislation enacted under the police power of the state to prevent fraud or to promote the public health and the general welfare. The legislation which embraces the matters coming under ch. 126 of the Statutes included in the Grain and Warehouse Commission Act, like the regulatory measure pertaining to wholesale produce dealers, is a police regulation, designed not only to protect the public from fraudulent practices but also to

State ex rel. Hickey v. Levitan, 190 Wis. 646.

promote the public health and welfare. Ch. 126 of the Statutes consists of seventy-four sections, and the provisions thereof include every conceivable phase of the handling, selling, inspecting, grading, and storing of grain in the city of Superior. Under sec. 126.06, "Any elevator or warehouse in any other city [than Superior] in this state doing business for a compensation which is operated in a manner described in this section, and which issues warehouse receipts for grain received or stored may, upon request, be declared public warehouses by the Grain and Warehouse Commission and shall thereafter be subject to the provisions of sections 126.01 to 126.73, inclusive, of the statutes." So that while in express terms the regulations involved in ch. 126 are confined to the city of Superior, warehouses and elevators in other cities may, upon request, come under the jurisdiction of the Grain and Warehouse Commission. The provisions of ch. 126 will not be set out or referred to herein in detail, but an examination of this chapter is invited in order that the general scope of the provisions of this act may be understood. It is sufficient to say that, under the specific provisions of this chapter, the interests of the public, in so far as a wholesale grain dealer or broker is concerned, are elaborately provided for in the minutest detail, and no act of a similar nature has come to our notice which is more comprehensive or exhaustive.

Sec. 126.64 of the Statutes provides:

"No person, firm, or corporation shall sell, or offer for sale in the city of Superior, any grain until the same has been inspected under the supervision of the Grain and Warehouse Commission for the state of Wisconsin, by its chief inspector, his deputy or assistant, or deliver any grain in said city in pursuance of any contract of sale made elsewhere to any person, corporation, elevator, mill, or from any such elevator to cars or boats, until such inspection shall be made, and any person or corporation violating this

section, or participating in any such sale or delivery, or by receiving such grain, shall be punished by a fine. . . ."

When we therefore bear in mind the purpose of the statute which defines and regulates the wholesale produce dealer, which is to prevent unfair and fraudulent practices, it is not surprising that the legislature has seen fit to exempt from the operations of this act persons subject to the jurisdiction of the Wisconsin Grain and Warehouse Commission. Persons coming under the jurisdiction of this commission are not produce dealers generally, but those who confine their operations to the handling of grain; and in the handling of such produce, every conceivable effort to perpetrate fraud is effectually blocked by a thorough and efficient scheme of inspection. There is no necessity, therefore, for obtaining a license under the Produce Dealers Act, or of the furnishing of a bond required thereby.

The statute pertaining to wholesale produce dealers must be logically so construed as to create the exemption solely in favor of a person who comes under the jurisdiction of the Wisconsin Grain and Warehouse Commission, in so far as he confines his operations to the handling of grain, and the exemption does not extend to one who as a wholesaler deals in produce generally or sells such produce on commission.

In the case of *State ex rel. Beek v. Wagener,* 77 Minn. 483, 80 N. W. 633, an act of the legislature of Minnesota, in some respects similar to the one herein involved, was construed. The act provided for the regulation of the business of commission merchants selling agricultural products. Under the act grain commission merchants were placed in a separate class and were required to give a bond, with terms substantially different from the bonds required from those who dealt in other agricultural products. The contention was there made that the act "discriminates as between the persons it seeks to operate upon, in that it arbitrarily re-

quires those who sell grain to give bonds containing certain stated conditions, and to render certain statements and reports at once, while other persons brought within its influence must give bonds with wholly different conditions, and are not compelled to make these statements or reports." The court held that "there is an apparent and just reason for this distinction as there is for distinguishing between the commission merchants mentioned in the law and other commission merchants; and it arises out of the peculiar conditions which surround the selling of grain. . . ."

We therefore hold that the exemption applying to those who come under the jurisdiction of the Wisconsin Grain and Warehouse Commission Act does not create a void classification.

What has heretofore been said with reference to the exemption of persons coming under the jurisdiction of the Wisconsin Grain and Warehouse Commission is also applicable to persons coming under the jurisdiction of the United States Packers and Stock Yards Administration, and no further comment upon this exception is deemed necessary.

The contention is next made that the act delegates legislative power to the Department of Markets, first in that it requires an applicant to furnish a bond in such form and in such an amount as the department shall find to be sufficient, and because it authorizes the department to pass on the sufficiency of the surety; and second, that it authorizes the department to issue such general orders as may be reasonably necessary to insure fair dealings by wholesale produce dealers with those from whom they buy produce or for whom they sell as agent; and in support of the position thus taken, the case of *Dowling v. Lancashire Ins. Co.* 92 Wis. 63, 65 N. W. 738, is cited. The *Dowling Case* had under consideration the constitutionality of ch. 195 of the Laws of 1891, which authorized the commissioner of insurance to "prepare, approve, and adopt a printed form in blank of a contract or policy of fire insurance, together with

such provisions, agreements or conditions as may be indorsed thereon or added thereto and form a part of such contract or policy; and such form shall, as near as the same can be made applicable, conform to the type and form of the New York standard fire insurance policy. . . ." In holding this act unconstitutional on the ground that it unlawfully attempted to delegate to the commissioner legislative power, the court, on page 73 of the opinion, said:

"Within the lines indicated, a discretion was reposed in the commissioner as to the form of the policy which embodied the substance of the contract, and which was to have the sanction and force of law. The effect, clearly, was to transfer to him bodily the legislative power of the state on that subject. Within the limits prescribed, he was to prepare just such a policy or contract as, in his judgment and discretion, would meet the *legal* exigencies of the case, and no one could certainly predict what the result of his action might be. It was not to be published, as laws are required to be, or to be approved by the governor. It was to be filed in the office of the insurance commissioner, instead of being deposited in the office of the secretary of state, and its use was to be enforced by the penal section of the act. He was not required by the act to perform any mere administrative or executive duty, or to determine any matter of fact for the purpose of executing or carrying the act into effect."

The opinion further quotes with approval from the opinion in the case of *Cincinnati, W. & Z. R. Co. v. Clinton Co. Comm'rs,* 1 Ohio St. 77, 88, where it is said:

"The true distinction is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made."

Having in mind the legal principles of constitutional law quoted from the *Dowling Case,* let us consider generally the provisions of the Wholesale Produce Dealers Act, and de-

State ex rel. Hickey v. Levitan, 190 Wis. 646.

termine whether or not such act delegates to the Department of Markets legislative power. Sub. (3) of sec. 1 of the act requires an applicant to pay a license fee of $5, and requires the presentation of satisfactory evidence concerning his reputability and reliability. The principal, if not the sole, purpose of the act being the prevention of unfair or fraudulent practices, the reliability and reputability of an applicant for a license becomes very important. The terms "reputability" and "reliability" as used in the statute embrace certain essential personal characteristics which if present in the applicant for a license tend to assure fair and honest dealing. In fact, the presence of these characteristics has a greater tendency to effect the main purpose of the act than the mere giving of a bond or other security. It is the common experience of mankind that personal references as to character and reputation are not always reliable, and therefore the legislature, in order to prevent unfair and fraudulent practices and to make as secure as possible the transactions of a wholesale produce dealer with those from whom he buys or for whom he sells, saw fit to require security in the form of a proper bond. Here we have outlined in the act a definite plan which will aid the department in determining the reputability and reliability of the applicant. He must present evidence of these necessary personal characteristics. The department is not authorized to act arbitrarily in the matter; on the contrary, all that the department is authorized to do is to take evidence, and if therefrom it appears that a proper showing has been made, then a license must issue, provided the other conditions of the act have been complied with. Similar legislative acts exist in this state, and among them may be mentioned the act pursuant to which real-estate agents and brokers are licensed, also insurance agents and brokers, attorneys at law, physicians, etc.

The case of *Milwaukee v. Ruplinger,* 155 Wis. 391, 145

State ex rel. Hickey v. Levitan, 190 Wis. 646.

N. W. 42, involved the constitutionality of an ordinance of the city of Milwaukee which provided for the licensing of junk shops, and required all applications for license to be made to the mayor, who had authority to grant or refuse to grant the same, depending on whether or not the good order of the city would be promoted thereby. It was there held that the granting or refusal to grant a license depended wholly upon whether as a fact it was found by the mayor that the good order of the city would or would not be promoted, and that the power delegated to the mayor was not legislative but was administrative in its character.

And so in the case at bar, when we bear firmly in mind the object and purpose of the act, we are forced to the conclusion that no legislative power was delegated to the department, but merely administrative power, and that such administrative power consisted in the finding of certain facts which the legislature has seen fit to prescribe as necessary to the issuance of a license, and, such facts having been found, the license must issue under the act as a matter of course. See, also, *Pinkerton v. Buech,* 173 Wis. 433, 181 N. W. 125.

The act further requires the applicant to furnish a bond, which shall be in such form and amount and with such surety or sureties as the department finds to be sufficient, and further imposes the furnishing of an additional bond whenever the department shall find that the existing bond has become insufficient.

"Each bond of the wholesale produce dealer shall be conditioned for the faithful performance of his duties as a wholesale produce dealer, for the observance of all laws relating to the carrying on of his business as a wholesale produce dealer, and for compliance with all general orders issued under this section."

The legislature has thus in express language fixed the terms of the bond, leaving the department to determine in

each particular case what amount shall be required as sufficient, and what sureties shall be approved, in order to effectuate the carrying out of the purpose of the act, which is the protection of the public from unfair and fraudulent dealing. Whether the bond is sufficient under any particular case depends upon facts, and it is clear that the legislature intended that the department shall ascertain these facts, and when such facts shall be found the bond shall be approved. This is likewise true with reference to the sureties. The legislature could in the first instance, instead of granting general administrative powers to the department, have gone into the matters involved in detail, in the act itself. But the law-making body undoubtedly realized that departments and commissions are composed of experts, with special knowledge on the subject on which they are authorized to act; that they are supplied with ample and efficient machinery to enable them to ascertain and determine facts; that they are in immediate and close contact with the persons who come under their administrative jurisdiction, and that they are specialists within the field of such jurisdiction. It also realized that legislative sessions are biennial, and that innumerable administrative matters might arise between sessions which could not receive prompt attention were it not for the creation and existence of departments and commissions; and over all, the legislature did in this act what it has done in many others, restrict the fact-finding body by the use of general language, realizing the impossibility of foreseeing and providing for the innumerable details which constantly arise in the matter of the delegation of administrative power and functions. As to the validity of a license law which requires security in the form of a bond under facts similar to those existing herein, reference is made to the numerous cases digested and referred to in 3 A. L. R. 1271 and subsequent pages. Among the leading cases there cited are *Hawthorn v. People,* 109 Ill. 302;

*State ex rel. Brewster v. Mohler,* 98 Kan. 465, 158 Pac. 408, affirmed in 248 U. S. 112, 39 Sup. Ct. 32; *State ex rel. Beek v. Wagener,* 77 Minn. 483, 80 N. W. 633, 46 L. R. A. 442; *State v. Bowen & Co.* 86 Wash. 23, 149 Pac. 330.

The objection that legislative power was unlawfully vested in the railroad commission was made in the case of *Kreutzer v. Westfahl,* 187 Wis. 463, 204 N. W. 595, which case involved the validity of the so-called Blue Sky Law. Although the subject involved in that case differs from that in the instant case, the principles applied are the same. A careful reading of the *Kreutzer Case* is convincing that the legislative standards involved in that case were no more definite or specific than those contained in the statute under consideration in this case, and the logic of that case, when applied to the case in hand, fully confirms us in our conviction heretofore indicated, that the Department of Markets has merely been constituted an administrative fact-finding body, and that it has not been clothed with legislative powers; that while the legislature could, as it has done in numerous other statutes, have prescribed more definite and certain standards, it has realized the difficulties and the impracticability involved in so doing, and has therefore wisely limited the department in a general way, leaving the facts to be found by and the administration of the law to the department. While the authorities in this country are not entirely in harmony in cases of a similar nature, it is our opinion that the cases referred to in 3 A. L. R., above cited, and other cases there found, constitute the weight of authority, and that this court is on record, particularly in the *Kreutzer Case,* with such weight of authority.

While we are satisfied with the validity of the act in respect to the various attacks made thereon and heretofore treated, nevertheless we are convinced that provisions are contained therein which invalidate the act. The statute ex-

empts "local groups, corporate or otherwise, composed of individuals residing within the same county and buying principally from such individuals or acting as agent to sell principally for such individuals." By "local groups" the legislature undoubtedly had reference to co-operative societies and organizations engaged in the business of disposing of their own produce. Had the legislature contented itself with a classification merely comprising these local groups, without any restriction as to the residence of the members, no valid objection could be raised to such classification. In order to constitute a valid classification, the law must apply equally to all similarly situated, in order to avoid an invasion of the field of class legislation; in other words, the classification must not be arbitrary, and it must be germane to effect the purpose of the act, which is the prevention of certain unfair and fraudulent dealings. The classification as to the members of these local groups as to residence constitutes an arbitrary and unwarranted classification. It is well known that organizations of this kind are frequently formed in cities which are located in part in different counties. The members are oftentimes related by blood ties, in business and socially, notwithstanding that they reside in adjoining counties. Under the act, farmers belonging to such a group, who reside in adjoining counties but in close proximity to each other, would be subject to the regulations embraced within the act; in other words, such groups, corporate or otherwise, would be compelled to obtain a license, furnish a bond, and conform to the general orders of the department, while other groups that are identical in all respects, barring only the arbitrary distinction of county residence, would be exempted from all regulation. Such a classification is not in accordance with the provisions of the federal constitution guaranteeing the equal protection of the laws, or with the provisions of the state constitution heretofore referred to, and constitutes class or special legislation, and is therefore invalid.

State ex rel. Hickey v. Levitan, 190 Wis. 646.

Sec. 99.32, being ch. 389 of the Laws of 1925, in defining a wholesale produce dealer, is in conformity only in part with the definition of a wholesale produce dealer as it is ordinarily understood. It is a class created by statutory definition. It is not confined solely to one who buys and sells, but it covers also those who sell as agents on commission. It does not embrace all wholesale dealers in produce, or all agents who sell on commission, but is limited in its terms expressly to those who buy produce for resale *principally* to others than consumers, or those acting as agents to sell produce *principally* to others than consumers. The buying for resale and the selling on commission constitute a *business* of the dealer. The term "principally" is a relative term, and its meaning is oftentimes uncertain and indefinite. A violation of the statute is constituted a misdemeanor, and is punishable as such by fine or imprisonment. Such statutes should be reasonably definite, so that any one who is liable to incur the penalty provided thereby may determine whether or not he comes under the act, and whether or not he is liable to incur such a penalty. As has heretofore been said, the statute classifies produce dealers into wholesale and retail dealers. It differs from the statute involved in the case of *State v. Powles & Co.* 90 Wash. 112, 155 Pac. 774, because under that statute there was a classification creating produce dealers, and merchants and dealers generally. In that case the statute contained the following provision:

"For the purpose of this chapter a commission merchant is defined and declared to be any person, firm or corporation whose principal business is the sale of farm, dairy, orchard or garden produce on account of the shipper or consignor."

In the *Powles Case* the court held that the term "principal business" was a relative term; that the statute did not fix a basis upon which the principal business could be determined; that it might be the value of the products con-

signed, or the gross amount of the sales, or the gross profits, or the net profits, or the number of articles handled. Furthermore, it was held that no period of time was fixed by the act which could serve as a basis for computation to determine what was the principal business.

The logic in the *Powles Case* is equally applicable to the instant case. While we agree with all of the reasoning contained in the opinion in that case, we are especially impressed with the one last above referred to. A merchant engaged in different kinds of business must pursue his operations for a certain specified time before it can ordinarily reasonably be determined what is his principal business. In the fixing of such time considerable latitude must be left to the legislature. And so in the instant case, one engaged in the wholesale produce business may also operate a retail business. During the first week the retail business, as far as the purchases or sales are concerned, may far exceed similar transactions in the wholesale line. However, in the course of a few days thereafter, the purchases and sales in the wholesale line may far exceed all of the previous transactions in the retail business. So that if the classification is to be as outlined in the statute here under consideration, some reasonable length of time ought to be fixed as a basis upon which the necessity or non-necessity of a license is to be determined. This is absolutely lacking in the legislative definition now under consideration, and we therefore conclude that the definition of a wholesale produce dealer is uncertain, and consequently void.

The definition of a wholesale produce dealer as contained in the statute being void, the entire act becomes invalid. Furthermore, the exemption of local groups, above referred to, is such an interdependent and vital provision of the definition of a wholesale produce dealer as to vitiate the entire act and to persuade us that it is unconstitutional as a whole.

We are not unmindful of the provision of sub. (8) of sec. 99.32 of the Statutes, which provides that:

"The provisions of sections 99.19 to 99.27, inclusive, . . . shall apply to the enforcement of this section and to all orders issued hereunder."

Sub. (3) of sec. 99.27 of the Statutes provides:

"The legislature intends that the provisions contained in sections 99.01 to 99.30, inclusive, shall be independent of each other and that the invalidity, for any reason, of any provision shall not affect the validity of any other provision."

Such a provision as is contained in sub. (3) of sec. 99.27 must be given its intended effect wherever possible. However, the exemption as to local groups is a vital part of the statutory definition of a wholesale produce dealer. In *Connolly v. Union S. P. Co.* 184 U. S. 540, 22 Sup. Ct. 431, 46 Lawy. Ed. 679, which involved the validity of the Illinois Trust Act of June 20, 1893, exempting agricultural products and live stock in the hands of the producer or raiser from the provisions of the act, and in which case such exemption was held unconstitutional as a violation of the Fourteenth amendment of the federal constitution, in respect to the equal protection of the laws, it was said:

"If different sections of a statute are independent of each other, that which is unconstitutional may be disregarded and valid sections may stand and be enforced. But if an obnoxious section is of such import that the other sections without it would cause results not contemplated or desired by the legislature, then the entire statute must be held inoperative. The first section of the act here in question embraces by its terms *all* persons, firms, corporations or associations of persons who combine their capital, skill, or acts for any of the purposes specified, while the ninth section declares that the statute shall not apply to agriculturalists or live-stock dealers in respect of their products or stock in hand. If the latter section be eliminated as unconstitutional, then the act, if it stands, will apply to agriculturalists

and live-stock dealers.    Those classes would in that way
be reached and fined, when, evidently, the legislature in-
tended that they should not be regarded as offending against
the law even if they did combine their capital, skill, or acts
in respect of their products or stock in hand.    Looking then
at all the sections together, we must hold that the legislature
would not have entered upon or continued the policy indi-
cated by the statute unless agriculturalists and live-stock
dealers were excluded from its operation, and thereby pro-
tected from prosecution.    The result is that the statute
must be regarded as an entirety, and in that view it must
be adjudged to be unconstitutional as denying the equal pro-
tection of the laws to those within its jurisdiction who are
not embraced by the ninth section."

The logic in the *Connolly Case* is uncontrovertible, and
applies in all its force to the instant case.

For the reasons above stated, we hold the entire act in-
valid and unconstitutional.

*By the Court.*—The demurrer of the defendants is over-
ruled, and it is ordered and adjudged that the relief prayed
for by the plaintiff be granted, and that the defendants be
and they are hereby enjoined from carrying out the pro-
visions of ch. 389 of the Laws of 1925, and from incurring
any expense whatsoever in regard to the same.    Let judg-
ment be entered accordingly.