### EMIL BORISZA
vs.
### LIQUOR CONTROL COMMISSION

Superior Court        Fairfield County        File #48305

Present:   Hon. ALFRED C. BALDWIN, Judge.

Wilson & Hanna ,                Attorneys for the Plaintiff.

E. J. Daly, Attorney-General,
Frank J. DiSesa,
    Assistant Attorney-General, Attorneys for the Defendant.

**MEMORANDUM FILED NOVEMBER 20, 1935.**

BALDWIN, J.   It is alleged in this appeal that this appel-lant for a long time has conducted a restaurant in Westport and has had a restaurant permit under the Liquor Control Act and has sold beer thereunder; that on or about July 10, 1935, he applied to the Commission for a new permit to sell beer and filed the necessary fee; that on or about July 30, 1935, the Commission denied his application upon the ground that the business was not a restaurant within the contempla-tion of the Act.

It is further alleged that the appellant is a suitable person to hold such permit and that the premises are suitable for the conduct of such business.

The answer admits all of the allegations of the appeal, excepting the allegation of suitability of the premises, which allegaticn is found in paragraph 5 of the appeal.

The answer to this paragraph is the following:

"Paragraph 5 is admitted, except insofar as its unsuit-ability may be found from the stipulation as to monthly gross receipts now on file."

From the stipulation it appears that appellant's average monthly gross receipts from the sale of food amount to $323 and that of this $175 is from the sale of hot meals, while $150. is from the sale of sandwiches and light lunches.   It also appears that the average monthly gross receipts from the sale of beer amounts to $300.

I should find great difficulty in finding these premises unsuitable for the issuance of a restaurant permit for the sale of beer upon the basis of "the stipulation as to monthly gross receipts . . .", since monthly gross receipts from sales of hot meals, sandwiches and light lunches or beer can have very little, if any, influence upon the suitability of the premises for the sale of beer.

But the argument proceeds upon a somewhat different theory.

The word "restaurant" is defined in the Act, **Sec. 1012C Cumulative Sup. 1935, page 427, as:**

"Space, in a suitable and permanent building, kept, used, maintained, advertised and held out to the public to be a place where hot meals are regularly served at

least twice daily as the principal business conducted therein, but which has no sleeping accommodations for the public and which shall be provided with an adequate and sanitary kitchen and dining room and shall have employed therein at all times an adequate number of employees."

It is admitted that all of the conditions provided for in this definition are present and constitute, or are within the premises in question, except that the appellee urges that since it appears from the stipulation that the average monthly gross receipts from the sales of beer were greater than the average monthly gross receipts from sales of hot meals, it cannot be found that "the principal business conducted therein" is the serving of hot meals, at least twice daily.

If we return again to the definition in the Act of a restaurant, we see that the Act does not require that the principal business conducted in the premises when a restaurant permit is sought to be obtained shall be the serving regularly, twice daily, of hot meals. The Act provides that the place shall be:

". . . . advertised and held out to the public to be a place where hot meals are regularly served at least twice daily as the principal business conducted therein."

It should be noted that the Act nowhere provides, as a condition of suitability, that the principal business shall be the serving regularly twice daily of hot meals. The language employed, and giving attention to the punctuation, is incapable of such construction.

But if we assume the Act to be capable of the construction upon which the Commission and the appellee have proceeded, by what standard are we to measure "principal business"? No standard is provided in the Act. Counsel discuss in their brief gross receipts from sales of hot meals and from sales of beer, as though this were the standard, but the Act is silent in this respect. May we not as well say net as gross receipts? And if we take either net or gross receipts, in what space of time shall they be taken for the comparison? Or, shall the standard of comparison be the capital invested in these respective lines, or time or effort devoted, or the number of customers supplied, or shall it be some other standard of measurement, such number of which space and time does not here permit of suggestion, and circumstances do not call for.

One might engage in numerous enterprises and one of these enterprises might require very little capital, very little time and attention, or the employment of but very little help, yet it might return one-third of one's income, while he might engage in several other enterprises no one of which returned as much as one-third of his income, yet altogether returned the other two-thirds of his income. The enterprise returning the one-third of the income could only be said to be the principal enterprise when it is principally only by that comparison.

The State of Wisconsin adopted an Act, a part of which provided as follows:

"For the purpose of this chapter a commission merchant is defined and declared to be any person, firm or corporation whose principal business is the sale of farm, dairy, orchard or garden produce on account of the shipper or consignor."

In an action involving this Act the court held that the term "principal business" was a relative term; that the statute did not fix a basis upon which the "principal business" could be determined; that it might be the value of the products consigned, or the gross amount of the sales, or the gross profits, or the net profits, or the number of articles handled. It was also further held that no period of time was fixed by the statute which could serve as a basis for computation, to determine what was the principal business.

**State vs. Powels & Co. 90 Wash. 112, 155, Pac. 774.** See also **State, Ex Rel Hickey vs. Levitan, 190 Wis. 646, 210 N.W. 111.**

The Act under consideration is vague and indefinite in that it contains no standard or rule by which the term "principal business" may be determined. Nor does it go so far as to require that the principal business shall be the serving of hot meals regularly twice daily, upon which basis the Commission appears to have proceeded in disposing of appellant's application. As pointed out, supra, the definition of restaurant, among other things contemplates the place to be, ". . . . advertised and held out to the public to be a place where hot meals are regularly served at least twice daily as the principal business conducted therein, . . . ."

The appellant is found to be a suitable person and the place

named in his application is a suitable place for a restaurant permit.

Judgment for the appellant may be entered accordingly.