## AMEDEE A. GRUET'S APPEAL
### LIQUOR CONTROL COMMISSION

Superior Court        Fairfield County        File #48879

Present:   Hon. ALFRED C. BALDWIN, Judge.

Wilson & Hanna,                Attorneys for the Plaintiff.

Edward J. Daly, Attorney-General,
Frank DiSesa,
    Assistant Attorney-General, Attorneys for the Defendant.

**MEMORANDUM FILED NOVEMBER 22, 1935.**

BALDWIN, J.   Upon the hearing upon this appeal it was agreed that a copy of the inspector's report to the Commission and a transcript of the evidence taken by the Commission should be received by the Court as the evidence in this appeal.

Appellant made application to the Commission on or about July 3, 1935, for a restaurant permit to sell liquor and filed the necessary fee under the provisions of the statute.   Inspection was made July 19, 1935, from ten o'clock to eleven-thirty o'clock A.M., and the hearing was had by the Commission August 26, 1935, on which date the application was denied upon the ground that "The place is not a restaurant within the contemplation of the Act."   .

The pleadings admit that a proper application was made, that the necessary fee was filed and that appellant is a suitable person to hold a restaurant permit.   The allegation that the premises described in the application are suitable premises

for the conduct of such business is denied.

The appellant is forty years of age, married and has two children. He has owned the premises described in his application twelve years and has conducted thereon a gasoline filling station and an eating place since 1923. He has never held a restaurant permit to sell liquor.

The premises devoted to the restaurant business includes two dining rooms, one of which is furnished with five tables each seating four persons, the other room having four tables and a bar fifteen feet long. An adequate number of chairs are also included. The kitchen is sixteen by sixteen feet, and is connected with the dining room. The kitchen is equipped with a service counter, a six can ice cream cabinet, soft drink cooler, a four burner gas stove having a top oven and broiler, a three burner oil stove, two electric broilers, an electric grill, sink, electric refrigerator, kettles, frying pans, silverware and dishes adequate to set all tables and serve customers to the extent of his dining rooms' seating capacities at one time.

Hot meals are served at all times, as also are sandwiches and light lunches.

In 1934, his gross receipts from the sale of food amounted to $1080.; the sales of hot food averaging around $60. a month and the sales of sandwiches and light lunches averaging around $30. a month. His sales of gasoline and oils for the year returned approximately $9000. in gross receipts.

**Section 1012c Cum. Sup. to the General Statutes at page 427,** defines restaurant as follows:

"The word 'restaurant' means space, in a suitable and permanent building, kept, used, maintained, advertised and held out to the public to be a place where hot meals are regularly served at least twice daily as the principal business conducted therein, but which has no sleeping accommodations for the public and which shall be provided with an adequate and sanitary kitchen and dining room and shall have employed therein at all times an adequate number of employees."

Appellee in its brief contends that this appeal presents two questions for decision, as follows:

"First, as to whether the appellant's establishment is properly equipped and set up as a restaurant and is a

suitable place as regards the permit applied for as contemplated in the Liquor Control Act; second, whether a business establishment claimed by its owner to be a restaurant and held out to the public by him as such, but where the average monthly gross receipts from the sale of merchandise such as gasoline, oils, et cetera, amounts to about twelve and one-half times as much as the average monthly gross receipts from the service of hot meals, is within the contemplation of the Liquor Control Act a suitable place that would be entitled to a restaurant permit to sell alcoholic liquors."

Appellee's brief proceeds as follows:

"It is the appellee's contention that in order for an establishment to come within the category of a restaurant as defined by the Liquor Control Act, **the principal business conducted therein shall be the regular service of hot meals at least twice daily** as provided in the Act. This definition of a restaurant shall be the controlling one as regards all establishments for which a restaurant permit is sought."

Attention is called to the words appellee underscores **(in bold type)**. In quoting the definition from the Act appellee also underscores the words, **"where hot meals are regularly served at least twice daily as the principal business conducted therein."**

Appellee appears to have gone far afield and to have read and construed this definition as requiring as a qualification for the owner of a restaurant to receive a permit to sell liquor that his principal business must be the serving of hot meals at least twice daily. This the Act nowhere requires. Appellee appears to lose sight of the words,

" 'restaurant' means space, in a suitable and permanent building, kept, used and maintained, advertised and held out to the public to be a place where hot meals are regularly served", etc. etc.

The second question appellee raises has no basis in the Act. Appellee further claims:

"There is no evidence before this Court that even hints that appellant regularly served hot meals at least twice daily."

Appellant has conducted a restaurant in these premises for several years. It is admitted that his restaurant is held out by him to the public as a restaurant. His average sales of hot meals monthly amounts to $60. and he serves hot meals at all times when customers apply. This is sufficient to meet the requirement of serving "hot meals regularly at least twice daily."

Appellee associates the business of the sale of gasoline, oils, et cetera by appellant as having controlling influence upon the suitability of his premises for a restaurant permit to sell alcoholic liquors.

The sales of gasoline, oils, et cetera, are ordinarily made from a gasoline station and not from a restaurant, and the sales of hot meals are ordinarily made from a restaurant and not from a gasoline station. Appellant has a gasoline station and a restaurant, but I hesitate to assume that appellee is concerned lest appellant should serve his restaurant guests with gasoline, oils, et cetera, and his gasoline, oil, et cetera customers with hot meals.

Appellee urges that appellants "principal business" is the business of the gasoline station and not the serving of hot meals.

It does not require that a permittee shall be wedded to the restaurant business and divorced from all other activities, nor does it require that the "principal business" of the permittee shall be the serving of hot meals as appellee assumes. And if that were the meaning of the Act, the term "principal business", with no rule or guide in the Act by which "principal business" could be measured, or one's activities in various business enterprises could be compared, leaves the Act so ambiguous and uncertain that it is incapable of definite interpretation in this respect. The term, as used is a relative term and vague and therefore it lends no aid in the determination of the application for a permit.

See **State vs. Powels & Co., 90 Wash. 112, 155 Pac. 774;** also **State, Ex Rel Hickey vs. Levitan, 190 Wis. 646, 210 N. W. 111.**

The appellant is found to be a suitable person and the premises described in his application are found to be suitable premises for the issuance of the permit as applied for.

Judgment may be rendered for the appellant.